NOT DESIGNATED FOR PUBLICATION

No. 123,198

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Geary District Court; COURTNEY D. BOEHM, judge. Opinion filed August 6, 2021.
Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant natural mother.

*Michelle L. Brown*, assistant county attorney, for appellee.

Before BUSER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: A habitual user of methamphetamine gave birth to J.C., a child who tested positive for methamphetamine when he was born. That woman appeals the termination of her parental rights to the child. The district court, after giving the woman a second chance to try to become a parent for J.C., held two termination hearings on the question of her parental rights. But the facts forced the court to finally find the woman unfit and it severed her rights to the child. The record on appeal reflects ample evidence to support the court's finding her unfit and that it is in the child's best interests to terminate her parental rights to J.C.

1

*J.C. was born in June 2018.*

At the hospital when he was born, J.C. tested positive for methamphetamine and amphetamine. Mother told nurses that she did not want her baby and she left the hospital. The baby was experiencing withdrawal symptoms and was not eating well. His father was incarcerated in the Geary County jail for possession of methamphetamine. His mother already has three children with another man. As a result, the State filed a petition alleging J.C. was a child in need of care.

Mother did not appear at the first hearing. The court placed J.C. in protective custody of DCF and ordered supervised visits with the parents. The parents had to submit to drug testing prior to such visits.

Mother did appear at the temporary custody hearing in October 2018. She stipulated to the State's factual allegations. The court ordered J.C. to remain in DCF custody. Because of her drug usage while pregnant, the State charged Mother with child endangerment, a class A misdemeanor. She was later sentenced to one year in jail with probation granted.

At the adjudication hearing in November 2018, the mother again stipulated to the allegations in the petition, and the district court adjudicated J.C. to be a child in need of care. The disposition hearing was held the same day, immediately after the adjudication, and the court found uniting the family was not workable because of Father's extensive criminal history, his current incarceration, and Mother had "done nothing" to make a home for her young child. After that, in February 2019, the State moved to terminate parental rights.

Mother tested positive for methamphetamine in both January and March 2019. She had her first visit with J.C. in March 2019, when he was about 10 months old.

*The court denied the first motion to terminate.*

In September and October 2019, the court heard the State's termination motion. Mother could not appear at the September hearing because she was in the hospital, having just given birth prematurely to another child with medical complications. She had made some progress toward making herself available for J.C. by the October hearing. She was scheduled to have weekly visits with J.C. but had missed a few visits. Her visits were still being monitored, though there were no concerns for J.C. when Mother was with him.

She had not completed a parenting class. She was not working but was receiving cash assistance, food stamps, and Medicaid. She had a three-bedroom apartment in public housing. She had completed outpatient drug treatment. Mother testified that she did not visit J.C. for the first nine months of his life because of her addiction, but she was sober now.

The court denied the State's motion. The court found the parents had a plan in place to achieve reintegration and that integrating the family may be possible in the foreseeable future. The court continued placement of J.C. in DCF custody but ordered unsupervised visits. But those hopes did not become reality.

In January 2020, Father tested positive for both methamphetamine and amphetamine. Mother last visited J.C. on January 25, 2020. In March 2020, Mother tested positive for methamphetamine and stopped communicating with her case manager. Mother blamed Father for her drug use.

The State filed its second motion to terminate parental rights. The court heard the motion in June 2020. Neither parent appeared in person, though they had notice of the hearing. Father's whereabouts were unknown. Both parents had warrants out for their

arrest for probation violations. J.C. had just turned two years old. Neither parent acknowledged his birthday. He was doing "really well" in his foster home.

The court terminated both parents' rights. The court noted that it gave the parents several opportunities to reintegrate but found an "utter failure by the parents to follow through with plans to reintegrate with the child." The court found that illegal substances had taken hold of the parents and caused them both to have outstanding warrants, positive UAs, missed visitations, and incomplete case-plan tasks.

The court found the parents unfit under K.S.A. 2019 Supp. 38-2269(b)(2), (b)(3), (b)(4), (b)(5), (b)(7), (b)(8), (c)(2) and K.S.A. 2019 Supp. 38-2271(a)(5). And the court found that they would be unfit in the foreseeable future. The court found it was in the best interests of J.C. to terminate parental rights.

*Several rules guide us.*

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to decide on the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the custody, care, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008).

When a child has been adjudicated to be a child in need of care, the court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2019 Supp. 38-2269(a).

4

The statute lists nonexclusive factors the court shall consider in determining unfitness. K.S.A. 2019 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2019 Supp. 38-2269(c). Any one of the factors in K.S.A. 2019 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2019 Supp. 38-2269(f).

Upon making a finding of unfitness, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2019 Supp. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2019 Supp. 38-2269(g)(1).

When we review a district court's termination of parental rights, it should "'consider whether, after review of all the evidence, viewed in the light most favorable to the State,'" it is "'convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's right should be terminated.'" *In re K.H.*, 56 Kan. App. 2d 1135, 1139, 444 P.3d 354 (2019). In reviewing a district court's decision based on any clear and convincing evidence standard, an "appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

*The court made comprehensive findings.*

Here, the district court found the parents unfit for:

> "[b](2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

5

"(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child;

"(4) physical, mental, or emotional abuse or neglect or sexual abuse of a child;

"(5) conviction of a felony and imprisonment;

. . . .

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child"

. . . .

"[c](2) failure to maintain regular visitation, contact or communication with the child or with the custodian of the child." K.S.A. 2019 Supp. 38-2269(b), (c).

Following the statute, the court also presumed the parents were unfit because J.C. had "been in an out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home." See K.S.A. 2019 Supp. 38-2271(a)(5).

Mother makes a focused attack. She contends the district court could not have found her unfit under K.S.A. 2019 Supp. 38-2269(b)(2) or (b)(4) because a fetus is not a child. Mother also contends she was not convicted of a felony and imprisoned to support a finding under K.S.A. 2019 Supp. 38-2269(b)(5).

It is true that the district court did not explain how K.S.A. 2019 Supp. 38-2269(b)(2), (b)(4), or (b)(5) applied to Mother. We will assume there was insufficient evidence to support those findings and move on to see whether the court's remaining findings were enough to terminate Mother's parental rights. They are.

6

We look first at Mother's drug usage. K.S.A. 2019 Supp. 38-2269(b)(3) recognizes that the use of drugs of such duration or nature can render a parent unable to care for the ongoing needs of the child. Mother admits she tested positive for methamphetamine in February 2020 but argues the reports about her March 2020 test result are contradictory.

There is clear and convincing evidence to support the court's finding that Mother's continued use of methamphetamine rendered her unable to care for J.C. Both an April 2020 report and a June 2020 report show Mother tested positive for methamphetamine on March 4, 2020. Mother's case manager also testified Mother tested positive on March 4, 2020. Mother had stopped visiting J.C. in January. She then cut off communication with her case manager in mid-March. Without any explanation, she failed to attend the termination of parental rights hearing.

We note that at the first termination hearing, Mother testified that her addiction prevented her from caring for J.C. for the first nine months of his life. From this, the court could reasonably conclude that her addiction continued to prevent her from taking care of J.C. and would for the foreseeable future. This is a valid finding supporting termination of Mother's rights. For example, in *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982), the panel held that continued unfitness can be judicially predicted from a parent's history. Then, in *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014), the panel pointed out that the foreseeable future must be determined from a child's perspective.

Mother admits that she failed to maintain visitation or communication with J.C. and that the district court's finding of unfitness under K.S.A. 2019 Supp. 38-2269(c)(2) was appropriate. She has played no real role in this child's life.

Mother challenges the court's finding of unfitness under K.S.A. 2019 Supp. 38-2269(b)(8). That statute deals with the lack of effort on the part of the parent to adjust the

parent's circumstances, conduct, or conditions to meet the needs of the child. She cites the progress she had made before the first termination hearing and her difficulty caring for both J.C. and her newborn daughter with high needs. She argues she successfully completed drug treatment, had appropriate housing, and had custody of her two oldest children.

Mother's progress was the reason the district court gave her a second chance. But that progress ended a few months after the first termination hearing. She started her journey. She did not complete it. The court wanted Mother to have a chance at unsupervised visits with J.C., but Mother chose to stop visiting. Her successful completion of drug treatment was before her relapse in early 2020. Drug treatment failed. Mother's small progress was not enough to make her a fit parent.

The district court focused on Mother's renewed drug use, missed visitations, and lack of effort to reintegrate with J.C. The court first noted that it had given the parents extra time to reintegrate with J.C. by denying the first motion to terminate parental rights. But the parents failed to follow through and execute the case plan.

The court then made specific findings on Mother's drug use, her missed visitations, her failure to complete case plan tasks, her failure to maintain contact with her case manager, her failure to appear at the court hearing, and how long J.C. had been in State custody:

> "It's very unfortunate that these parents—I don't doubt that they love [J.C.], but it's unfortunate that illegal substances have taken such hold of them, and caused them, both, to have outstanding warrants, positive UAs, not making visitations, not completing a parent class, issues with maintaining employment, maintaining housing, working case-plan tasks. There's just been a [] basic and utter failure to follow through with their plans, and to complete anything that they needed to, to get [J.C.] back in their homes, and back in their lives.

8

"[J.C.] . . . went into custody on June 21st, of 2018. So, he has been in State's custody for almost two years.

. . . .

"The [] parents didn't even appear, today. And the parents haven't maintained any contact with Saint Francis. There's been no plan put in place, and they do not appear to be presently fit and able, nor that they would be [] fit and able in the foreseeable future."

The district court's findings are supported by the record. J.C. has been in foster care since birth. At the first termination hearing Mother admitted that she could not care for J.C. while she was using methamphetamine. She began using methamphetamine again after the first termination hearing. She stopped visiting J.C. five months before the second termination hearing and cut off communication with her case manager. She was also not visiting her youngest child. She failed to even show up for the second termination hearing. Given these facts, we hold that the district court could have found that it was highly probable Mother was unfit and that her unfitness was likely to continue in the foreseeable future. The district court did not abuse its discretion in finding it was in the child's best interests to terminate Mother's parental rights.

Affirmed.